The judgment of the court was pronounced by
Eustis, C. J.
The relator Baudoin was appointed by the governor, with the advice and consent of the Senate, a notary public in and for the parish and city of New Orleans, “in the place of Felix Percy, whose term of office has expired.” He took the oath of office and demanded of Percy the delivery of the records belonging to the office. On his refusal to deliver them, Baudoin applied to the Court of the Fifth District of New Orleans for a mandamus to enforce their delivery to him as the successor of Percy in office; which was granted, nisi. On the answer of Percy the cause was tried, and a peremptory mandamus was awarded. From the decree of the district court awarding the mandamus the defendant has appealed. No motion has been made to dismiss the appeal; and both parties assume that the matter in dispute is within the appellate jurisdiction of this court.
The defendant was commissioned as a notary public in 1839. The commission of the relator bears date the 14th of March, 1850.
The main propositions in favor of the right of the defendant to hold the office, which we deduce from the arguments of eounsel, are : 1st, that his commission of 1839 has not expired, but is still in force; 2d, that the appointment of the relator is unauthorised by the Constitution and laws, and consequently void.
*290 The first question to be determined is, whether the duration of the office was limited by a term. The provision of the Constitution of 1812 and its operation are too well known to the profession to require anything, more than a general reference to it, in order to authorise the statement made by the counsel for the relator, that a large portion of the executive offices were not affected either as to the duties required to be performed, or the mode of appointment by the Constitution of 1845.
The Constitution of 1812 provided the mode of appointment for offices established by it, defining to the Legislature the right of prescribing the mode of appointment of all other offices to be established by law. Art. 3, § 9.
By the act of 1813, made to carry out this constitutional provision, it was provided, that the governor shall appoint, with the advice and consent of the Senate, as many notaries public as may be deemed necessary, who shall remain in office during good behavior, &c. Under this act the defendant was appointed and held his office. Several of the offices established by law under the Constitution of 1812 were limited in their duration, but that of notary and some others remained without any limitation.
This being the state of things when the Constitution of 1845 was adopted, we have to ascertain its effect upon this previous legislation and the offices existing by virtue of it. The mode of appointment was not changed in relation to them; for the fiftieth article leaves the power where the Constitution of 1812 had placed it — in the Legislature: “The governor shall nominate, and by and with the consent of the Senate, shall appoint all officers whose offices are established by this Constitution, and whose appointment is not therein otherwise provided for: provided, however, the Legislature shall have a right to prescribe the mode of appointment to all other offices established by law.” There were offices established by law, upon which the Convention acted, and are recognised expressly in the Constitution, for which the legislature had a right to prescribe the mode of appointment. But the Legislature was not called upon to exercise this right; the power had been exercised; the offices were created; and the fiftieth article is a simple delegation of power. The phraseology of the corresponding article of the Constitution of 1812 has this marked difference. The words in this instrument are “other offices to be established by law.” The fiftieth article of the N ew Constitution treats of “other offices established bylaw;” meaning those already established as well as those to be hereafter established. The reason of the discrepancy • is obvious. The Constitution of 1812 provided for the organisation of a State Government, which was to succeed the former Territorial Government established under the authority of the United States; that of 1845 merely for a change in some important particulars of a subsisting State Government, but leaving portions of it untouched. Great changes were made by the Constitution of 1845 in the judicial power, in the Legislative power, in the elective franchise, and some other matters; but the changes in the executive branch of the government were comparatively few.
The article 142 is in the same sense when it provides, that the laws in force at the time of the adoption of this Constitution and not inconsistent therewith shall continue as if the same had not been adopted.
The article 96 provides, that the duration of all offices not fixed by this Constitution shall never exceed four years. This article takes effect proprio vigore; it precludes by its terms the necessity for any legislation to give it force. The application of this limitation to offices held under former laws, continued in force by the Constitution, appears to us to be obvious and necessary. To except them *291 would defeat, we think, the plain and evident purpose of the Constitution itself. The laws in force were to continue; the offices were not superseded; the incumbents were not changed. We find no clause in the Constitution which pre-supposes the necessity for any legislation on this subject. On the contrary, we infer from its whole tenor, that the operation of the Constitution itself necessarily carries into effect what was considered by the Convention as an important change in our system: the limitation of the term of office by the Constitution itself.
We therefore consider that the term of office of notary public held by the defendant was limited by the Constitution to four years from the time of the taking effect of said Constitution; and that the relator has been duly appointed his successor in office.
The judgment of the district court is therefore affirmed, with costs.